MEMORANDUM OF DECISION

MANFREDI, J.
This is an appeal of a decision to revoke the Plaintiffs gaming license by a decision dated at October 30, 2009. A hearing was held below before Michael P. Brown on September 24, 2009. At that hearing the Plaintiff was pro se and the Office of Director of Regulation was represented by Counsel to the Director John O’Brien.
A notice of the decision was mailed to the Plaintiff on October 30, 2009. The Plaintiff subsequently filed his own appeal and thereafter retained attorney M. John Strafaci to represent him in this matter.
Following the filing of the record and briefs in this matter a hearing was held before this Court on March 3, 2010.
The court has reviewed the record filed by the defendant, and at the hearing on March 3, 2010 in the presence of the attorneys and the Plaintiff, viewed the video of the incident around which this ease revolved and, which had been made part of the record.

Standard of Review:

MTO Section 3-224(j) states:
“The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
*229 (4) Affected by other error of law;
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.
If the court finds such prejudice it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case to the agency for further proceedings in accordance with its ruling. For purposes of this section, a remand is a final judgment.”

Discussion

Section 5(g) of the Mohegan Tribe-State of Connecticut Gaming Compact provides that a gaming license may be revoked for the same reasons for which it may be denied. Section 5(e) of the compact provides that:
“... The state gaming agency may deny a gaming employee license to any applicant who: ...
(i) has been determined to be a person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the effective regulation of gaming or create or enhance the chances of unfair or illegal practices, methods, and activities in the conduct of the gaming activities permitted hereunder; provided, however, that the State shall not apply standards for approval of licenses pursuant to this section more rigorously than those actually applied in the approval of employee licenses and gaming enterprises operated or regulated exclusively by the State; ...”
The revocation of the Plaintiffs gaming license arises out of an incident that occurred on July 17, 2009. At that time, the Plaintiff was employed as a security supervisor for the Mohegan Tribal Gaming Authority and was supervising the monitor room for the video cameras which monitored the Mohegan Sun Hotel. Also present was Security Officer Jean Baker who was watching the video monitors, in accordance with his job duties.
Mr. Baker testified that about three weeks before this incident he had observed an Asian woman going up the elevator with three different men and when she was coming down the elevator she was counting money. On the night of July 17 he saw the same woman with an Asian man and a Caucasian man. The three of them got onto the elevator and rode up to the 17th floor. They knocked on the door of room 1705 and went inside. Shortly thereafter, the Asian woman and two Asian men then came out.
Based upon this information Mr. Baker believed that prostitution was taking place. Mr. Baker also testified that he had no training regarding what to look for in connection with prostitution and has never been involved in his six years at the casino with any prostitution incidents.
Mr. Baker further testified that the Asian males stayed on the 17th floor while the Asian woman and another Asian male left the area. Mr. Baker reported these events to supervisor Corey who instructed him to keep the camera on the floor. The Asian man who remained behind sat on the couch in the corridor on the 17th floor and continued to be monitored by the camera. Mr. Baker left the area of the monitors “to do the keys” and Mr. Corey continued to monitor the cameras. Mr. Baker testified that Mr. Corey stated “He’s jerking off” and that was when Mr. Baker returned to the monitors.
Mr. Corey denies ever making that statement.
*230 The court has reviewed the video of the Asian man sitting on the couch on Floor 17. The video shows the Asian man sitting on the couch wearing a polo shirt, shorts, socks and sneakers. He is using some type of electronic device such as an iPod or telephone holding it in his lap. At one point he puts his hand into his shorts and appears to adjust or fondle himself. This lasted for approximately 3 to five seconds. He engaged in the same conduct within a few moments, again appearing to either fondle or adjust himself. At no time was his genitalia exposed.
In his findings of fact, the hearing officer below stated:
“The appellant testified that the person on the couch was not doing anything wrong, yet Security Officer Baker’s voluntary statement indicates that the appellant said out loud, “the Asian guy is jerking off.” (sic).
The appellant believed that this behavior, public masturbation, did not constitute unusual or suspicious activity, nor was there anything suspicious about the Caucasian male going into the room and exiting a brief time later. Appellant stated he did not believe he had enough facts to act on the incident.”
In his conclusions the hearing officer further states:
“... After viewing the video, it is clear to this hearing officer that the activity was suspicious, if not illegal, and certainly warranted immediate further investigation. Also disturbing to this hearing officer is the admittance by the Appellant that he saw nothing wrong with the actions of the Asian man masturbating in a public area of the hotel. Such activity is illegal and depending on the circumstances could have resulted in a variety of charges against the accused ..,”
Additionally, the hearing officer stated:
“... I find by a preponderance of the evidence that the gaming license of the Appellant should be revoked. His evaluation of this incident is unsatisfactory and that should not be allowed to occur again whether under the same or different circumstances. Personnel vested with the trust of the Supervisor’s position must make appropriate and timely decisions to protect the public from exposure to criminal activity as described in this case.”
The hearing officer’s decision to revoke the Appellants gaming license rest upon his findings of fact and conclusions of law that the Asian man engaged in public masturbation and that the conduct observed was illegal. As noted previously MTO Section 3—224(j) provides the criteria for sustaining an appeal brought under the circumstances. This court shall affirm a decision of the agency unless it finds that the substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions or decisions are, among other things: “Affected by other error of law” or are “Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; ...”
The Court finds that the hearing officer’s conclusion that the Asian man was engaged in any illegal conduct to be clearly erroneous based upon the record as a whole. Having viewed the video the Court notes again that the Asian man was covered at all times, did not expose his genitalia, and had his hand in his pants for no more than a few seconds. It is entirely unclear in viewing the video as to whether the subject was masturbating as the officer concluded or was merely adjusting himself. In any event, even if he was fondling himself the conduct does not constitute a crim *231 inal offense under the Connecticut General Statutes.
The court has reviewed those statutes in connection with this conduct, and the only statute which comes close to covering the situation is CGS 53a-186. Public Indecency: Class B misdemeanor, which states:
“(a) A person is guilty of public indecency when he performs any of the following acts in a public place: (1) an act of sexual intercourse as defined in subdivision (2) of section 53a-65; or (2) any lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person; or (3) any lewd fondling or caress of the body of another person. For purposes of this section, “public place” means any place where the conduct may reasonably be expected to be viewed by others.”
Assuming that the hotel hallway is a public place for purposes of this section it is apparent that the Asian man did not engage in any sexual intercourse, lewd exposure of his body, or fondling or caressing of the body of another. Under the circumstances, he could not be found guilty of public indecency. Therefore, although his conduct may have been offensive to others in the area it does not amount to the commission of a crime, nor was it illegal as found by the hearing officer.
Given the clear error of the hearing officer in his determinations and conclusions regarding the illegality of the activity of the Asian man in the hallway, the court finds that the substantial rights of the appellant had been prejudiced and that the decision of the agency shall be reversed and the appellants gaming license restored.